UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE EARL SIMON, III,

                Petitioner,

                              Case No. 13-cv-14942

v.

                              Honorable Linda V. Parker

PAUL KLEE,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION FOR
APPOINTMENT OF COUNSEL AS MOOT [ECF NO. 14], DENYING THE
PETITION FOR WRIT OF HABEAS CORPUS [ECF NO. 1], DENYING A
CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO
APPEAL *IN FORMA PAUPERIS***

## I.  INTRODUCTION

State prisoner Willie Earl Simon, III ("Petitioner"), has filed a *pro se* habeas

corpus petition, challenging his Oakland County, Michigan conviction for one count

of first-degree criminal sexual conduct.   *See* Mich. Comp. Laws §

750.520b(1)(b)(ii) (sexual penetration of a person who is related to the defendant

and is at least thirteen years old, but less than sixteen years old).   Petitioner alleges

as grounds for relief that his trial attorney was ineffective, the prosecutor shifted the

burden of proof, and the trial court erred when sentencing him.   The State argues in

an answer to the petition filed through counsel that Petitioner's

prosecutorial-misconduct claim is procedurally defaulted, that Petitioner's

sentencing claims are not cognizable on habeas review, and that the state courts'

rejection of Petitioner's claims did not result in decisions that were contrary to

federal law, unreasonable applications of federal law, or unreasonable

determinations of the facts.   The Court agrees with this assessment of Petitioner's

claims.   Accordingly, the habeas petition and Petitioner's motion for appointment

of counsel will be denied.

## II.   BACKGROUND

The charge against Petitioner arose from allegations that he raped his

half-sister.   He initially pleaded guilty to the charge, but withdrew his plea at

sentencing.   He was subsequently tried before a jury in Oakland County Circuit

Court.   The Michigan Court of Appeals accurately summarized the testimony at

trial as follows:

> The victim's mother testified that defendant, her daughter's
> half-brother, stayed at her home for two weeks in August 2009 after a
> birthday party.   The victim was 14 years old at the time, has cognitive
> impairments, and has a history of seizures.   The victim testified that
> defendant was her brother because they both have the same father,
> Willie Simon, Jr.   The victim also testified that, while defendant was
> staying at her house, he repeatedly raped her both vaginally and anally.
> The victim did not understand sex and did not know that she had
> become pregnant.   The victim's mother explained that her daughter's
> lack of a [menstrual] period over the next few months was attributed to
> being taken off a seizure medicine that she had been on for a long
> period of time.   Because the victim was suffering from prolonged

2

stomach pains, the victim's mother took her to see her pediatrician in January 2010 when the pregnancy was discovered. Shortly thereafter, the victim underwent a late-term abortion procedure that took two days to complete.   DNA evidence was taken from the fetal tissue and turned over to the police.   Police took buccal swab samples from both defendant and the victim.   These DNA samples confirmed that defendant was the father of the aborted fetus. Police also took a buccal swab sample from Simon, Jr.   The DNA taken from Simon, Jr. showed that he was the father of both defendant and the victim.

*People v. Simon*, No. 305939, 2013 WL 1137116, at *1 (Mich. Ct. App. Mar. 19, 2013).

Petitioner did not testify, but he presented two defense witnesses: his mother, Lisa Reynolds, and his father, Simon, Jr.   (ECF No. 1 at Pg ID 9, 12.)   Ms. Reynolds testified that Petitioner began to associate with the victim in August 2009 and that Simon, Jr. had informed her that the victim was his daughter.   (*Id.* at Pg ID 10, 12.)

Simon, Jr. testified that Petitioner and the victim were his children, but that he first learned of the victim's existence in 1997 when the victim was about three years old and he was arrested on a warrant for failure to pay child support.   (ECF No. 13-14 at Pg ID 659-60.)   He also testified that he saw his brother and the victim's mother having sex in his bathroom in 1994 and that incident caused him to question whether he was really the victim's father.   (*Id.* at Pg ID 664.)   He claimed that he did not challenge paternity of the victim because he could not afford a DNA test at

3

the time.   (*Id.* at Pg ID 666.)   Defense counsel did not request any jury instructions on lesser-included offenses, and, on July 21, 2011, the jury found Petitioner guilty, as charged, of first-degree criminal sexual conduct.   *Simon*, No. 305939, 2013 WL 1137116 at *1.   On August 15, 2011, the trial court sentenced Petitioner to prison for 135 months (eleven years, three months) to thirty years with 442 days of jail credit.   *Id.* at *6.   The court also assessed fees and costs, directed Petitioner to comply with HIV testing and the Sex Offender Registration Act, and ordered lifetime GPS monitoring.   (*See* ECF 1 at Pg ID 12.)

Petitioner raised his habeas claims in an appeal of right.   The Michigan Court of Appeals affirmed his conviction and sentence, *see Simon*, No. 305939, 2013 WL 1137116, and the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.   *See People v. Simon*, 495 Mich. 853; 835 N.W.2d 589 (2013) (table).

On November 7, 2013, Petitioner filed his habeas petition in the United States District Court for the Western District of Michigan, which transferred the case to this District because venue was proper here.   Petitioner's grounds for relief read as follows:

      I.     Defendant was denied his right to effective assistance of counsel where he admitted to a lesser offense but trial counsel failed to request instructions on a lesser included offense.   US CONST AM VI

II.     Prosecutorial misconduct denied Mr. Simon a fair trial
        where the prosecution shifted the burden of proof during
        cross-examination and closing argument.

III.    The sentencing court made two guidelines-scoring errors.
        Because correction of the mistakes would change the
        guidelines range, Mr. Simon must be re-sentenced.

IV.     Because Mr. Simon was convicted of offenses against a
        complainant who was not "less than thirteen years of age,"
        lifetime electronic monitoring was not a permissible
        sentence condition.   Counsel was ineffective for failing to
        object.

(Brief in Support of Pet. for Writ of Habeas Corpus, pages 5, 9, 13, and 16, ECF No.

1, Pg ID 13, 17, 21, 24.)

## III.   STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."   *Harrington v.

Richter*, 562 U.S. 86, 97 (2011).   Pursuant to § 2254, the Court may not grant a state

prisoner's application for the writ of habeas corpus unless the state court's

adjudication of the prisoner's claims on the merits

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal
        law, as determined by the Supreme Court of the United
        States; or

5

> (2)     resulted in a decision that was based on an unreasonable
>           determination of the facts in light of the evidence
>           presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite to
> that reached by [the Supreme] Court on a question of law or if the state
> court decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.   Under the "unreasonable
> application" clause [of § 2254(d)(1)], a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from [the Supreme] Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court

for Part II).   "[A] federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly.   Rather, that

application must also be unreasonable."   *Id*. at 411.

      "AEDPA thus imposes a 'highly deferential standard for evaluating

state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands

that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*,

537 U.S. 19, 24 (2002) (*per curiam*)."   *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state

6

court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

## IV.   ANALYSIS

### A.   Claim One: Ineffective Assistance of Trial Counsel

Petitioner alleges that his trial attorney deprived him of effective assistance when the attorney conceded the elements of third-degree criminal sexual conduct, but failed to request a jury instruction on that offense.

#### 1.   Legal Framework

"[C]learly established federal law here is *Strickland v. Washington*," 466 U.S. 668 (1984).   *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).   Under *Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."   *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."   *Id*.

The "deficient performance" prong of the *Strickland* test "requires showing

7

that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."   There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations omitted).   "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.   "This does not require a showing that counsel's actions 'more likely than

8

not altered the outcome,' " but "[t]he likelihood of a different result must be

substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*,

466 U.S. at 693).

Furthermore, review of an ineffective-assistance-of-counsel claim is "doubly

deferential" under AEDPA

> because counsel is "strongly presumed to have rendered adequate
> assistance and made all significant decisions in the exercise of
> reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——
> –, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v.
> Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674
> (1984); internal quotation marks omitted). In such circumstances,
> federal courts are to afford "both the state court and the defense
> attorney the benefit of the doubt." *Burt, supra*, at ——, 134 S.Ct., at
> 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

### 2.   Application

In Michigan, "[a] necessarily included lesser offense is an offense in which all

its elements are included in the elements of the greater offense such that it would be

impossible to commit the greater offense without first having committed the lesser

offense." *People v. Apgar*, 690 N.W.2d 312, 316 (Mich. Ct. App. 2004).   As

charged in this case, third-degree criminal sexual conduct was a necessarily

lesser-included offense of first-degree criminal sexual conduct, because both

offenses require sexual penetration of a victim who is thirteen, fourteen, or fifteen

years old.   *Cf.* Mich. Comp. Laws § 750.520b(1)(b) (first-degree criminal sexual conduct) with Mich. Comp. Laws § 750.520d(1)(a) (third-degree criminal sexual conduct).   The factor that distinguished first-degree criminal sexual conduct from third-degree criminal sexual conduct was a relationship to the victim "by blood or affinity to the fourth degree."   Mich. Comp. Laws § 750.520b(1)(b)(ii).   Because it was impossible to commit first-degree criminal sexual conduct without having first committed third-degree criminal sexual conduct, the trial court would have been required to instruct the jury on third-degree criminal sexual conduct if defense counsel had requested an instruction on that offense.   *See People v. Cornell*, 646 N.W.2d 127, 142 (Mich. 2002).

No one disputed that the victim was thirteen to fifteen years old at the time of the crimes, and DNA evidence confirmed that Petitioner had impregnated the victim.   Therefore, a jury instruction on third-degree criminal sexual conduct would have increased Petitioner's chance of being convicted.   It is obvious from the record that defense counsel's strategy was to convince the jury that Petitioner was not related to the victim.   If he had been successful in asserting this defense, Petitioner would have been acquitted.   Under the circumstances, it was not ineffective assistance to adopt an all-or-nothing strategy in the hope that the jury would acquit Petitioner rather than convict him of a lesser offense.

Taking an all-or-nothing approach in an effort to obtain a full acquittal of the defendant can be a reasonable strategic decision, *Lewis v. Russell*, 42 F. App'x 809, 810-11 (6th Cir. 2002), as can the failure to request an instruction on a lesser-included offense.   *Washington v. United States*, 291 F. Supp. 2d 418, 442 (W.D. Va. 2003).   Furthermore, as the Michigan Court of Appeals pointed out, an all-or-nothing defense strategy was defense counsel's only viable option,

> considering the fact that: (1) there was no dispute that the victim was less than 16 years old at the time of the rapes; and (2) the DNA evidence taken from the victim, defendant, and the fetal tissue confirmed that defendant impregnated the victim, and, therefore, that defendant had sexually penetrated the victim.   It seems reasonable that the only feasible defense theory of the case, under these facts, was for defense counsel to exploit the possibility that defendant and the victim were not blood related as required in the statute.

*Simon*, 2013 WL 1137116, at *2.

"The fact that the defense failed does not transform a strategic decision into ineffective assistance of counsel."   *Sua v. Tilton*, No. 07CV1338 JM(BLM), 2008 WL 2385521, at *21 (S.D. Cal. June 9, 2008); *see also Riley v. Lockhart*, 726 F.2d 421, 423 (8th Cir. 1984) (noting that trial counsel employed an all-or-nothing strategy in the belief that the jury would acquit the defendant and that "hindsight, though a superior view, does not form the basis for finding a constitutional deprivation in strategic or tactical decisions"); *U.S. ex rel. Sumner v. Washington*, 840 F. Supp. 562, 573–74 (N.D. Ill. 1993) (stating that, "[w]hile the

11

either-acquittal-or-murder choice turned out to be a loser, *Strickland* and its progeny

teach that counsel's actions are not to be assessed with the benefit of hindsight" and

that counsel's approach did not fall "below the level of constitutionally permissible

legal representation").   "[A] 'conscious and informed decision on trial tactics and

strategy cannot be the basis for constitutionally ineffective assistance of counsel

unless it is so ill chosen that it permeates the entire trial with obvious unfairness.' "

*Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) (quoting *Johnson v. Dretke*, 394

F.3d 332, 337 (5th Cir. 2002)).

Here, defense counsel's decision to forego a jury instruction on the

lesser-included offense of third-degree criminal sexual conduct was reasonable trial

strategy, given the overwhelming evidence of Petitioner's guilt.   Further, the state

appellate court's decision was not an unreasonable application of *Strickland*, which

presumes that counsel's conduct is sound trial strategy and falls within a wide range

of reasonable professional assistance.

Given the double deference due to defense counsel and the state court's

decision, this Court cannot say that defendant's performance was deficient.   The

Court therefore declines to grant relief on Petitioner's

ineffective-assistance-of-counsel claim.

## B.   Claim Two: Prosecutorial Misconduct

Petitioner alleges next that the prosecutor deprived him of a fair trial by shifting the burden of proof to him during her questioning of witnesses and during closing arguments.   The questions and comments pertained to the defense theory that Petitioner's uncle, rather than his father (Simon, Jr.), was the victim's real father.   The prosecutor questioned witnesses as to whether any of Petitioner's family members had informed the police about Petitioner's uncle and suggested that the uncle was the victim's father.   *See* Trial Tr. Vol. II, at page 92, July 20, 2011, ECF No. 13-13, Pg ID 602 (Detective Ryan McDonald's testimony); *id.* at page 95, Pg ID 605 (Police Officer Jody Horne's testimony that the first time she heard about Simon, Jr.'s brother being the victim's real father was at trial and that Petitioner's family did not contact the police with this information); Trial Tr. Vol. III, at page 27, July 21, 2011, ECF No. 13-14, Pg ID 636 (Police Officer Kelly Bauss' testimony that Petitioner's father did not suggest taking a buccal swab from his brother); *id.* at page 80, Pg ID 689 (Simon, Jr.'s testimony that he never suggested to anyone in law enforcement that they should talk to his brother.   And in her closing argument, the prosecutor said:

> He's questioning the DNA.   What witnesses other than Willie, Jr. did you hear questioning [the human identity scientist's] conclusion?   . . . [S]iblings have kids, what are those kids to each other?   They're first cousins.   First cousins are related within the fourth degree.   So maybe Mr. Willie Simon Jr. . . . shoulda done a little more research in that regard.

(*Id.* at pages 124-25, Pg ID at 733-34.)   Petitioner claims that these comments and the prosecutor's related questions allowed the jury to presume his guilt from the failure to produce evidence to substantiate the defense theory.

The Michigan Court of Appeals determined on review of Petitioner's claim that Petitioner failed to preserve his claim for appellate review because he did not object to the prosecutor's questions and conduct at trial.   The State therefore argues in its answer to the habeas petition that Petitioner's claim is procedurally defaulted.

## 1.   Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."   *Trest v. Cain*, 522 U.S. 87, 89 (1997).   Pursuant to the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."   *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).   In this Circuit,

> "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met:   (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default."   [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)].   To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court decision disposing

14

of the claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

## 2. Application

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants in criminal cases to preserve their claims for appeal by first making an objection in the trial court. *People v. Carines*, 597 N.W.2d 130, 137-38 (Mich. 1999). Petitioner admits that he did not preserve his claim by objecting at trial. (Pet. for Writ of Habeas Corpus, at page 9, ECF No. 1, Pg ID 17.) The first factor is satisfied.

The Michigan Court of Appeals was the last state court to adjudicate Petitioner's claim in a reasoned opinion, and, as noted above, it reviewed the claim "for plain error affecting [Petitioner's] substantial rights," because Petitioner did not object to the prosecutor's conduct at trial. *Simon*, 2013 WL 1137116, at *3. A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (citing *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989)). Thus, the second factor is satisfied.

The third procedural-default factor is satisfied if the state procedural rule in question is an adequate and independent state ground for denying review of a federal

constitutional claim.   "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review."   *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

"Michigan's contemporaneous-objection rule is both a well-established and normally enforced procedural rule," *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011), and the Michigan Court of Appeals relied on the rule to preclude a full review of Petitioner's claim.   Although the appellate court also addressed the merits of Petitioner's claim,[1] this alternative holding "does not require [the Court] to disregard the state court's finding of procedural bar."   *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998).   As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative*   holding.   By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.   See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.   In this way, a state court may reach a federal question without sacrificing

---

[1]   The Court of Appeals stated that the prosecutor's questions were a response to defense counsel's theory of the case, that the prosecutor's closing argument did not imply Petitioner had to prove anything, and that the prosecutor did not shift the burden of proof.   *Simon*, 2013 WL 1137116, at *2.

its interests in finality, federalism, and comity.

*Id.* at 264 n.10 (emphasis in original).

Here, the state appellate court relied on the contemporaneous-objection rule to preclude relief and addressed the merits of Petitioner's claim on an alternative basis. Thus, the contemporaneous-objection rule is an adequate and independent state ground for denying review of Petitioner's constitutional claim, and the third procedural-default factor is satisfied.

The fourth and final factor is whether Petitioner has shown "cause" for his failure to object to the prosecutor's conduct and resulting prejudice. Petitioner has not advanced any argument in support of a finding of "cause and prejudice." The Court therefore deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003) (citing *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000)).

In the absence of cause and prejudice, a habeas petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be

17

credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Petitioner has not produced any new evidence that was not presented at trial. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address his claim on the merits. All four factors of a procedural default have been satisfied here.

### 3. Harmless Error

Even if Petitioner's claim were not procedurally defaulted, the prosecutor informed the jury that she carried the burden of proof. (Trial Tr. Vol. III, at page 125, July 21, 2011, ECF No. 13-14, Pg ID 734.) Additionally, the state trial court instructed the jury that the attorneys' questions and closing arguments were not evidence. The trial court also instructed the jurors that the prosecutor had to prove each element of the crime beyond a reasonable doubt, that Petitioner was presumed innocent and did not have to prove his innocence or produce any evidence, and that

18

the jurors should consider only the admissible evidence, which included the witnesses' testimony and the exhibits.   (Trial Tr. Vol. I, at pages 174-77, July 19, 2011, ECF No. 13-12, pg ID 409-12; Trial Tr. Vol. III, at page 100, 125-29 July 21, 2011, ECF No. 13-14, Pg ID 709, 734-38).

These generic instructions served to mitigate any prejudice caused by the prosecutor's remarks, *United States v. Gracia*, 522 F.3d 597, 604 (5th Cir. 2008), because jurors are presumed to follow their instructions.   *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).   Furthermore, the evidence against Petitioner was overwhelming.   The alleged constitutional error could not have had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), and was harmless.   The Court declines to grant relief on Petitioner's prosecutorial-misconduct claim.

## C.   Claims Three and Four: Sentencing Errors

### 1.   The Sentencing Guidelines

Petitioner alleges that the trial court incorrectly scored offense variables ten and thirteen of the Michigan sentencing guidelines.   Petitioner asserts that he is entitled to be re-sentenced because correcting the mistakes would change the sentencing guidelines range.

#### a.   Clearly Established Federal Law

The state trial "court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).   Consequently, Petitioner's allegation that the trial court incorrectly scored two offense variables of the state sentencing guidelines is not a cognizable claim here.   *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).   Even if Petitioner's claims were cognizable on habeas review, the claims lack merit for the following reasons.

### b.   Offense Variable Ten

Petitioner received ten points for offense variable ten, which is exploitation of a vulnerable victim.   Mich. Comp. Laws § 777.40.   Ten points is appropriate if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status."   Mich. Comp. Laws § 777.40(1)(b).   The statute defines "vulnerability" as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," Mich. Comp. Laws § 777.40(3)(c), and it defines "exploit" as manipulation of "a victim for selfish or unethical purposes."   Mich. Comp. Laws § 777.40(3)(b).

20

Petitioner maintains that he did not exploit the victim's vulnerability, nor manipulate her for selfish or unethical purposes.   Citing *People v. Cannon*, 481 Mich. 152, 159; 749 N.W.2d 257, 261-62 (2008), Petitioner argues that the mere existence of one or more factors described in § 777.40(1)(b) does not automatically equate to vulnerability; there must also be proof that he exploited the victim's vulnerability.   According to him, the victim's youthfulness and cognitive limitations were mere factors at play, not something that made her readily susceptible to persuasion or temptation, as required by § 777.40(3)(c). Consequently, he maintains that he should not have received any points for offense variable ten.

The Michigan Court of Appeals disagreed.   It found ample evidence in the record to support the scoring of ten points for offense variable ten.   In reaching this conclusion, the Court of Appeals noted that:

> [t]he victim was only 14 years old at the time of the rape and her mother testified that she is cognitively impaired.   At the time of trial, when the victim was 16, her mother testified that she functioned at an 11–year–old age level.   While the victim was in high school at the time of trial, she attended the special education program and her courses were at a third-grade level.   Nearly two years after the rapes occurred, the victim testified that she did not know what "sex" was and could not explain it. The victim's testimony demonstrated that she is a naïve, young girl, and was an especially easy target for defendant.   Defendant is the victim's older half brother and he was staying at her house for an extended period of time.   Defendant took advantage of his access to the victim while no one was around, and he manipulated her when he

21

told her not to tell anyone about the rapes because her mother would put
her on the streets if she got pregnant.

*Simon*, 2013 WL 1137116, at *6.   The Court of Appeals concluded that the trial
court did not err when it scored ten points for offense variable ten, "because there
was evidence that defendant exploited the victim's youth and cognitive
impairment."   *Id*.

The state court's factual findings are supported by the record, and its analysis
of Petitioner's claim was objectively reasonable.   Therefore, Petitioner's challenge
to the scoring of offense variable ten lacks merit in addition to being non-cognizable
on habeas review.

### c.   Offense Variable Thirteen

Petitioner contends that the trial court erroneously scored twenty-five points
for offense variable thirteen, which is a continuing pattern of criminal behavior.
Mich. Comp. Laws § 777.43.   As used in this case, a score of twenty-five was
appropriate if "[t]he offense was part of a pattern of felonious criminal activity
involving 3 or more crimes against a person."   Mich. Comp. Laws § 777.43(1)(c).

Petitioner contends that he did not commit three or more crimes against a
person within five years.   The Michigan Court of Appeals, however, correctly
pointed out that "[t]he victim specifically testified that defendant sexually assaulted
her vaginally and anally more than three times and that it 'kept going on and on'

even though she asked him to stop." *Simon*, 2013 WL 1137116, at *6.   This

observation is supported by the record.   *See* Trial Tr. Vol. I at 247-50, 253, 255-57,

July 19, 2011, ECF No. 13-12, Pg ID 482-85, 488, 490-91.   It is also clear from the

record that these events occurred within the same year when Petitioner was staying

in the victim's home.   The Court of Appeals therefore reasonably concluded that,

"the trial court did not clearly err when it scored 25 points for OV 13" and that

Petitioner was not entitled to re-sentencing.   *Simon*, 2013 WL 1137116, at *6.

Petitioner's claim lacks merit in addition to being non-cognizable on habeas review.

### 2.   Electronic Monitoring

Petitioner's fourth and final claim alleges that the trial court erred when it

imposed lifetime electronic monitoring at his sentencing.   Under Mich. Comp.

Laws § 750.520b(2)(d), trial courts must sentence a defendant convicted of

first-degree criminal sexual conduct to lifetime electronic sentencing "in addition to

any other penalty imposed."   But Mich. Comp. Laws § 750.520n(1) limits lifetime

electronic monitoring to defendants seventeen years old or older who committed

criminal sexual conduct against an individual less than thirteen years of age.   The

victim in this case was fourteen years old when Petitioner subjected her to criminal

sexual conduct.   Petitioner therefore claims that he was wrongfully sentenced to

lifetime electronic monitoring and that his trial attorney was ineffective for failing to

object to this provision of his sentence.

Petitioner supports his sentencing claim with references to state case law and statutes.   Federal courts, however, "may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."   *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."   *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Michigan Court of Appeals, moreover, concluded in *People v. Johnson*, 826 N.W.2d 170, 175 (Mich. Ct. App. 2012), "that, *regardless of the ages of the defendant and the victim*, MCL 750.520b(2) requires lifetime electronic monitoring for first-degree criminal sexual conduct convictions when the defendant has not been sentenced to life in prison without the possibility of parole."   *Id*. at 174-75.   The state trial court in this case did not sentence Petitioner to life imprisonment without the possibility of parole.   The Michigan Court of Appeals therefore concluded that the trial court properly sentenced Petitioner to lifetime electronic monitoring.   Because state courts are the final authority on matters of state law, the state appellate court's interpretation of state law binds this Court sitting in habeas corpus.   *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001).   It follows that defense counsel

24

was not ineffective for failing to object to the electronic-monitoring provision of the sentence.   Petitioner has no right to relief on the basis of his fourth and final claim.

## V.   CONCLUSION

Petitioner's second claim is procedurally defaulted, and the state courts' adjudication of his other claims on the merits did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.   Accordingly, the habeas corpus petition is denied.

## VI.   CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . .   When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

25

whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate the Court's assessment of Petitioner's first, third, and fourth claims.   Reasonable jurists also would not find it debatable whether the second issue (prosecutorial-misconduct) states a valid claim of the denial of a constitutional right or whether the Court was correct in concluding that the issue is procedurally defaulted.   The Court therefore declines to issue a certificate of appealability.

## VII.   ORDER

For the reasons given above,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for appointment of counsel (ECF No. 14) is denied as moot.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on appeal because he was granted leave to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith.   28 U.S.C. § 1915(a)(3); Fed.

R. App. P. 24(a)(3)(A).

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 24, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 24, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

27